FILED

AUG 0 1 2002

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
           DEPUTY CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----ooOoo----

PRISCILLA M. FRENCH,

      Plaintiff,

  v.

MARRIOT INTERNATIONAL, INC.,
MARRIOT MAPLE RIDGE, and DOES
1 through 100, inclusive,

      Defendants.

NO. CIV. S-01-1070 WBS JFM

MEMORANDUM AND ORDER

----ooOoo----

      In this diversity case, plaintiff Priscilla French sues her former employer, defendants Marriott International, Inc. and Marriott Senior Living Services Inc. (incorrectly sued as Marriott Maple Ridge), for defamation. Defendants now move for summary judgment on plaintiff's defamation claim, or, in the alternative, for summary adjudication on plaintiff's claim for punitive damages.

I. Factual Background

      On February 1, 1999, plaintiff was hired by defendants to work as a Director of Sales at defendants' Marriott Maple Ridge facility in Laguna, California ("Maple Ridge"). (Pl's

1

33

Decl. ¶ 1.) Maple Ridge provides assisted living and special care services for the elderly. (Pl's Dep. at 182.)

Plaintiff's supervisor at Maple Ridge and the General Manager of the facility was Barbara Favila. (Favila Decl. ¶ 1.) According to plaintiff, during the course of her employment at Maple Ridge, she was "drawn into a number of disputes and quarrels with . . . Favila as a result of [her] hypercritical and caustic nature." (Pl's Decl. ¶ 2.) These disputes allegedly included: (1) an incident in which plaintiff expressed to Favila her dissatisfaction with Favila's "demoralizing tactics," and was told by Favila that "I am going to run this ship my way;" thereafter, plaintiff was allegedly "shunn[ed]" by Favila, who "refused to communicate with [plaintiff] unless it was absolutely essential for business purposes" (Pl's Decl. ¶ 2; Pl's Dep. at 101-105.); and (2) an occasion on which plaintiff informed Favila of her tentative plans leave Marriott to prepare for her upcoming wedding; Favila allegedly became "overjoyed" at the prospect, and then "publicly criticized" plaintiff when plaintiff decided not to quit. (Pl's Decl. ¶ 4.)

In April of 2000, Favila claimed to have discovered discrepancies in paperwork plaintiff submitted in connection with a bonus program called "Sweat the Small Stuff," which eventually led to plaintiff's termination from Marriot. The bonus program offered cash incentives to sales personnel based on the number of reservations and move-ins they lodged during a given time period. (Pl's Dep. Ex. M.) Plaintiff received and reviewed an internal office memorandum describing the bonus program in February of 2000. (Pl's Dep. at 178, 179.) The memo states:

> At the end of each period, submit your *Sweat the Small Stuff Sales Incentive Form* attached to the: *MMR Appropriateness Form for new reservations or a copy of the first period's rent check for any new move-in*. You [sic] general manager will verify the information, sign the incentive form and process it for payment. The sales associate will also forward the signed copy to your Area Sales Director, if requested.

(Id.)(emphasis in original.) The Sales Incentive Form is a table for a sales associate to fill out indicating the number of reservations or move-ins made during a given time period. (Id.) The Appropriateness Form is a form designed to determine whether a prospective resident is suitable for Maple Ridge in terms of medical or nursing care or other services the applicant is likely to need.

On April 21, 2000, plaintiff gave a Sweat the Small Stuff sales incentive form to Favila. (Pl's Dep. at 179-180.) Plaintiff's incentive form indicated a total of fourteen reservations and one move-in for "period 4" of the bonus program, the period between March 25, 2000 and April 21, 2000. (Id. at 181-186.) Plaintiff did not attach any Appropriateness Forms or rent checks for the reservations and move-in to the incentive form. (Id. at 190.) Favila returned the incentive form to plaintiff along with a post-it note stating that "the highlighted attachments are required for processing," and requesting plaintiff to resubmit the incentive form "w/ appropriate documents." (Id. at 190-192, Ex. I; Favila Decl. Ex. B.)[1]

According to plaintiff, she went to Les Vostry-Ritter, the Assistant General Manager who maintained financial records at

---

[1] Favila and plaintiff offer conflicting testimony regarding what, if anything, was highlighted.

3

the facility, and asked his permission to review the reservation and move-in deposit checks for period 4. (Pl's Decl. ¶ 9.) Plaintiff alleges that using these checks, she compiled a handwritten list of the names of thirteen people who had made reservations during period 4 and the dates of their checks. (Id. ¶ 10; Pl's Dep. at 206, 216 Ex. J.)

On April 29, 2000, plaintiff returned the incentive form to Favila along with the handwritten list, but did not attach any of the period 4 rent checks. (Id. at 206-08, 216.) According to plaintiff, she attached a post-it note to the documents she gave Favila saying "Barb, is this right?" (Id. at 207.) Later that day, plaintiff also gave Favila an "inquiry status report" on which she appears to have indicated whether assessment forms had been completed or deemed not necessary for various period 4 reservations. (Pl's Decl. ¶¶ 10, 11, Ex. N; Pl's Dep. at 207-212.)

Favila reviewed plaintiff's documentation, and claims to have found several discrepancies with her own records, which consisted of a reservation log and her own incentive form. (Favila Decl. ¶ 5; Favila Dep. at 78-80, Ex. L, T.) For instance, plaintiff's handwritten list stated that she had made a reservation for Dorothy Kinney during period 4, but Favila's reservation log reflected that Ms. Kinney's reservation had been canceled on April 4, 2000, more than two weeks before the end of period 4. (Pl's Dep. at 220-222, Ex. L.) Plaintiff explained at her deposition that she confused Ms. Kinney with Lillian Snyder, another woman for whom she had made a reservation during period 4 but whose name she did not include on her handwritten list. (Id.

at 222, Ex. J.) Favila testified at her deposition that Lillian Snyder should have been counted as a reservation during period 4. (Favila Dep. at 73, Ex. L.)

Plaintiff also indicated on her handwritten list that a reservation had been made for Art Reber during period 4, but Favila's reservation log reflected that his reservation had been made during period 3. (Pl's Dep. at 226-28; Ex. J, L.) Plaintiff testified at her deposition that Mr. Reber's period 3 reservation was denied by Favila because of his problems with alcoholism. According to plaintiff, Mr. Reber's family lobbied Maple Ridge to reinstate his reservation, which Maple Ridge allegedly did in period 4. (Pl's Dep. at 227-28.) A reservation agreement for Mr. Reber was signed by Favila on April 12, 2002, several days into period 4. (Whelan Decl. Ex. B.)

Plaintiff also listed Fanny Mirsky as a new reservation for period 4. On April 29, 2000, eight days after the close of period 4, plaintiff learned that Ms. Mirsky had died. (Pl's Dep. at 223-225.) Because period 4 ended on April 21, 2000, and because nothing in the company's records indicated that Ms. Mirsky died during period 4, Favila acknowledged in her deposition that Ms. Mirsky should have been counted as a new reservation for period 4. (Favila Dep. at 80-82.) Nevertheless, Favila failed to count Ms. Merski as a new reservation on her own incentive form, which she used to double-check plaintiff's submissions. (Id., Ex. T.)

Another reservation listed on plaintiff's handwritten list that was inconsistent with Favila's incentive form was a reservation for Robert Klein. Favila's incentive form reflects

5

that no reservation was made for Mr. Klein during period 4. (Favila Dep. at 80, Ex. T.) Favila's reservation log sheet, however, states that a reservation was indeed made for Mr. Klein in period 4. (Id., Ex. L) According to the log sheet, Mr. Klein's reservation was refunded on June 16, 2000, long after the close of period 4. At her deposition, Favila acknowledged that her log sheet was inconsistent with her incentive form. (Id. at Ex. 80.)

Based on the discrepancies she perceived between plaintiff's documentation and her own records, Favila consulted her supervisor at Maple Ridge, Mike Eden. (Id.; Favila Decl. ¶ 6.) Eden told Favila to discuss the situation with Ron Rose, the regional human resources manager. (Favila Dep. at 37.) Favila told Rose that plaintiff had submitted an incentive form without appropriate documentation and with numbers that Favila felt were unsupported. (Id. at 40.) Rose told Favila that based on this information, it appeared that plaintiff had willfully falsified company records, which was grounds for termination. (Id. at 36-40.)

On May 4, 2002, Favila, the assistant general manager Les Vostry-Ritter, and the area sales director Lisa Wilkes, met with plaintiff behind closed doors in plaintiff's office. (Id. ¶ 7.) Favila informed plaintiff that she was being terminated because she falsified documents in the Sweat the Small Stuff contest. (Pl's Dep. at 231-237; Pl's Decl. ¶ 15.)

Plaintiff's termination notice stated that plaintiff was terminated for "willful falsification of company records." (Favila Decl., Ex. C.) Plaintiff alleges that after her

6

termination meeting, the statement that plaintiff was terminated for willfully falsifying company records was published by defendants to (1) Catherine Holzer, a human resources worker at defendants' corporate office; (2) the Frick Company, which administers defendants' unemployment claim program; and (3) a prospective employer with whom plaintiff interviewed. (Favila Dep. at 63; Pl's Decl. ¶ 30; Johnson Decl. ¶ 2.) Plaintiff also contends that she was compelled to repeat this statement to her fiancee, a friend, her two daughters, and defendants' area manager Mike Eden. (Pl's Decl. ¶¶ 19, 24, 31; Jue Decl. Ex. C.)

II. Discussion

The court must grant summary judgment to a moving party "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party adverse to a motion for summary judgment may not simply deny generally the pleadings of the movant; the adverse party must designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Simply put, "a summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). The non-moving party must show more than a mere "metaphysical doubt" as to the material facts. Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).

Plaintiff's sole cause of action against defendants is

7

a state law claim for defamation. In order to establish a claim for defamation, the plaintiff must show that a defamatory and unprivileged statement concerning the plaintiff was published to a person other than the plaintiff who understood its defamatory meaning. See 5 Witkin Summary of California Law § 476 (9th ed. 2001.) A false accusation that an employee falsified company records is defamatory per se. Kelly v. General Telephone Co., 136 Cal. App. 3d 278, 284 (1982). Defendants argue that summary judgment is appropriate because (1) there was no publication of the defamatory statement; (2) the statement was not false; (3) the publications were privileged; and (4) plaintiff was not compelled to self-publish.[2] In the alternative, defendants move for summary adjudication that plaintiff is not entitled to recover punitive damages.

A. Publication

Plaintiff alleges that the defamatory statement at issue was published numerous times by various agents employed by defendants. Defendants contend that "there are no triable issues of material fact establishing the required element of 'publication'." (See Def's Mem. of P & A at 1.) Although the substance of this argument is not entirely clear, defendants appear to argue that plaintiff has only speculated about who said what to whom, without pointing to any specific communications. (See Def's Reply at 8.) The factual record, however, is at least clear enough to create a triable issue of fact that the remark to

---

[2] Defendants do not dispute that the alleged defamatory statements concerned plaintiff, or that the persons to whom the statements were published understood the statements to have a defamatory meaning.

8

the effect that plaintiff falsified documents was published by
Favila to the persons present at plaintiff's termination meeting,
and to Catherine Holzer, who received plaintiff's termination
notice for filing after plaintiff was fired.

B.  Truth of the Statement

Truth is a complete defense to defamation. <u>Washer v.
Bank of America</u>, 87 Cal. App. 2d 501, 509 (1948). Defendants
argue that plaintiff's defamation claim must fail because the
statement that she was fired for willfully falsifying company
records is true. While plaintiff was in fact fired for willfully
falsifying company records, this does not vitiate plaintiff's
claim for defamation. As the court explained in <u>Jackson v.
Paramount Pictures Corp</u>, "[i]f A says B is a thief, and C
publishes the statement that A said B was a thief, in a certain
sense this would be the truth, but not in the sense that the law
means. . . . [I]t would be but a repetition by [C] of a
slanderous charge. His defense must consist in showing that in
fact B is a thief." 68 Cal. App. 4th 10, 26-27 (1998)(quoting
<u>Gilman v. McClatchy</u>, 111 Cal. 606, 612 (1896)); <u>see also</u> <u>Ray v.
Citizen-News Co.</u>, 14 Cal. App. 2d 6, 8-9 (19836); <u>Arditto v.
Putnam</u>, 214 Cal. App. 2d 633, 639 n.2 (1963). Thus, defendants
must show that the defamatory charge itself - that plaintiff
willfully falsified company records, rather than the fact that
she was terminated for falsifying records - is true. See <u>Lipman
v. Brisbane Elementary Sch. Dist.</u>, 55 Cal. 2d 224, 233
(1961)(defendants bear the burden of proving truth in defamation
cases involving private figures and matters of private concern).

Disputed issues of fact exist as to whether plaintiff

willfully falsified company records. A dispute also exists as to whether there was in fact an error in plaintiff's submissions. A reasonable jury could find that there was nothing erroneous about plaintiff's submissions, and that accordingly there was no truth to the statement that plaintiff falsified the documents in the contest.

C. Common Interest Privilege

Defendants argue that they are shielded from liability by the common interest privilege of California Civil Code 47(c). Section 47(c) provides that a communication is privileged if it is made "without malice, to a person interested therein, by one who is also interested." Cal. Civ. Code § 47(c). Defendants bear the initial burden of establishing that the alleged defamatory statement concerns a common interest of the speaker and listener and thereby falls within the scope of the privilege. Lundquist v. Reusser, 7 Cal. 4th 1193, 1208 (1994). If defendants establish that the statement concerns a common interest, it becomes plaintiff's burden to prove that the statement was made with malice. Id.

It is undisputed that the alleged defamatory remark was published by defendants only to other employees within the corporation, and to the Frick Co., the administrator of defendants' unemployment insurance. These persons all shared a common interest in the substance of the alleged defamatory remark. See Cuenca v. Safeway San Francisco Employees Federal Credit Union, 180 Cal. App. 3d 985, 995 (1986)("Communications made in a commercial setting relating to the conduct of an employee have been held to fall squarely within the qualified

privilege); Kelly v. General Telephone Co., 136 Cal. App. 3d 278, 284 (1982)("an employer is not liable for defamation if one of its employees advises other employees, such as personnel officers, of a suspicion that a former employee falsified records, as long as the communication is not motivated by malice").

However, the privilege of section 47(c) will not shield defendants from liability if the statement at issue was made with malice. Malice is "a state of mind arising from hatred or ill will, evidencing a willingness to vex, annoy, or injure another person." Lundquist, 7 Cal. 4th at 1204 (quoting Brown v. Kelly Broadcasting Corp., 48 Cal.3d 711, 723 (1989)). Malice can be shown by demonstrating, inter alia, that (1) the defendant "lacked reasonable grounds to believe the statement was true and therefore acted with reckless disregard for [the] plaintiff's rights"; or (2) the publication was motivated by hatred or ill will toward the plaintiff. Cuenca, 180 Cal. App. 3d at 997; Agarwal v. Johnson, 25 Cal. 3d 932, 944 (1979).

Where the analysis ultimately turns of questions as to state of mind, summary judgment is generally inappropriate. Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1302 (9th Cir. 1999). In this case, there are disputed issues of material fact regarding whether the statements were made with malice. Accordingly, defendants are not entitled to summary judgment on plaintiff's defamation claim.

Because the court finds that a triable issue of fact exists as to whether the statements were made with malice, the court does not need to address whether publications made by the

11

plaintiff herself are privileged under section 47(c), or whether plaintiff was compelled to self-publish the defamatory statement. Summary judgment must be denied in any case.

D. <u>Punitive Damages</u>

Defendants move, in the alternative, for summary adjudication on the question of whether plaintiff is entitled to recover punitive damages. To recover punitive damages, plaintiff must prove by clear and convincing evidence that defendants are guilty of "oppression, fraud, or malice." Cal. Civ. Code § 3294(a). Where, as here, the defendant is a corporation, punitive damages cannot be awarded unless the offending conduct is either performed or ratified by an officer, director, or managing agent of the corporation. <u>Id.</u> § 394(b).

It is undisputed that none of the people who published or heard the defamatory statement at issue were officers or directors of defendants' corporation. A "managing agent" for purposes of section 3294(b) includes "only those corporate employees who exercise substantial independent authority and judgment in their corporate decisionmaking such that their decisions ultimately determine corporate policy." <u>White v. Ultramar, Inc.</u>, 21 Cal 4th 563, 573 (1999).

The employees of defendants who allegedly published or heard the defamatory remark (and were therefore in a position to ratify it) are: (1) Mike Eden, the area manager responsible for managing 8-10 facilities; (2) Barbara Favila, the general manager of Maple Ridge facility where plaintiff worked; (3) Les Vostry-Ritter, the assistant general manager of the facility; (4) Ron Rose, Marriott's regional human resources manager; (5) Lisa

12

Wilkes, the area sales director for Marriott; and (6) Catherine Holzer, an employee at Marriott's corporate office. Marriott is a multi-national corporation with thousands of hotels and facilities worldwide. The highest ranking Marriott employee allegedly involved in this case was Mike Eden, an area manager responsible for 8-10 facilities. Defendants have submitted declarations stating that none of the employees involved in this case had any input into overall corporate policy. (See Favila Decl. ¶¶ 1,3.)[3]

Plaintiff suggests that because Favila had influence over the decision to fire plaintiff, she should be considered a managing agent. (See Pl's Response to Def's Sep. Statement of Undisputed Facts ¶ 26 ("Marriott terminated Plaintiff on Favila's request and direction with no real investigation. She had unlimited power to create and modify policy").) However, it is well established that the mere ability to hire and fire employees does not render a supervisory employee a managing agent. Id. Rather, the employee must have authority to establish or change the corporation's basic policies. Id. at 574. Plaintiff has come forward with no evidence to suggest that Favila or any of the other people who published or heard the defamatory statement at issue had this kind of authority.

///
///

---

[3] Plaintiff complains that these declarations state the improper legal conclusion that the above-mentioned employees have no input into corporate policy. The legal conclusion to be reached, however, is whether these employees are "managing agents."

IT IS THEREFORE ORDERED that defendants' motion for summary judgment be, and the same hereby is, DENIED, and defendants' motion for summary adjudication that plaintiff is not entitled to recover punitive damages be, and the same hereby is, GRANTED.

DATED: July 31, 2002

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

```
                                                               crf
```
United States District Court
for the
Eastern District of California
August 1, 2002

* * CERTIFICATE OF SERVICE * *

2:01-cv-01070

French

   v.

Marriott Intl Inc

---

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Eastern District of California.

That on August 1, 2002, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office, or, pursuant to prior authorization by counsel, via facsimile.

    Christopher H Whelan                  SH/WBS
    Law Offices of Christopher H Whelan
    11246 Gold Express Drive
    Suite 100
    Gold River, CA 95670

    William Skipworth Jue
    Seyfarth Shaw
    400 Capitol Mall
    Suite 2350
    Sacramento, CA 95814-4420

Jack L. Wagner, Clerk

BY: _____
    Deputy Clerk